1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

DAVID R. GELINAS, et al.,

10

Plaintiffs,

11

v.

12

U.S. BANK, NA, et al.,

13

Defendants.

CASE NO. 16-1468JLR

ORDER GRANTING MOTIONS
TO DISMISS

14

15

## I.   INTRODUCTION

16

Before the court are Defendants U.S. Bank Trust, NA[1] ("U.S. Bank") and Caliber

17

Home Loans, Inc.'s ("Caliber Home") motion to dismiss (1st Mot. (Dkt. # 8)) and

18

Quality Loan Service Corporation of Washington's ("Quality Loan") motion to dismiss

19

(2d Mot. (Dkt. # 10)) Plaintiffs David and Karen Gelinas's complaint (Compl. (Dkt.

20

21

22

[1] The complaint names "U.S. Bank, NA, as Trustee for LSF9 Master Participation Trust" as a defendant.  (Compl. (Dkt. # 1) ¶ 2.)  However, Defendant U.S. Bank responds that the proper entity is "U.S. Bank Trust, N.A."  (Corp. Discl. Statement (Dkt # 7) at 1.)  Accordingly, the court uses "U.S. Bank Trust, N.A."

# 1  # 1)).  The court has considered the motions, the submissions filed in support thereof and

2  opposition thereto, the relevant portions of the record, and the applicable law.  Being

3  fully advised,[2] the court GRANTS U.S. Bank and Caliber Home's motion and GRANTS

4  Quality Loan's motion for the reasons set forth below.

## II.    BACKGROUND

6        This case arises out of a planned non-judicial foreclosure—a trustee's sale—of the

7  Gelinases' home and Mr. Gelinas's resulting bankruptcy filing.  (Req. (Dkt. # 9) at 2, Ex.

8  F at 2; Compl. ¶¶ 18, 21.)  On September 21, 2006, the Gelinases signed a deed of trust[3]

9  for $368,000.00 with Washington Mutual Bank, which was recorded against the

10  Gelinases' residence in Marysville, Washington.  (Compl. ¶¶ 13, 15; *see also* Req. at 2,

11  Ex. A, at 3.)  In the three-way deed of trust transaction, the Gelinases were the borrowers,

12  Washington Mutual Bank was the lender, and Rainier Title was the trustee at the time the

13  parties signed the deed of trust.  (Compl. ¶¶ 15, 28.)  The balance of the Gelinases'

14  allegations focus on the multiple assignments and transfers of the deed of trust prior to

15  the foreclosure.

16  //

17  //

18        [2] No party has requested oral argument, and the court deems it unnecessary to the
disposition of this motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

19

20        [3] A deed of trust is a three-party transaction in which a borrower conveys title to his or
her property to a trustee, who holds the title in trust for the lending party, who is the deed of trust
beneficiary.  *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 38 (Wash. 2012).  The deed of trust
grants the beneficiary a power of foreclosure that the beneficiary can invoke if the borrower
defaults on the loan.  *Id.* (citing RCW 61.24.020; RCW 61.12.090; RCW 7.28.230(1)).  The
Washington Deed of Trust Act empowers the trustee to sell the property at a trustee's sale.  *Id.*;
RCW 61.24.020.

1    Although the Gelinases' complaint is not a model of clarity, the court summarizes

2    the Gelinases' allegations as follows.[4]  The Gelinases allege that various banks assigned

3    the deed of trust multiple times after its initial recording.  (*Id*. ¶¶ 28-29, 31-34.)  First, on

4    August 1, 2008, Deutsche Bank National Trust Company ("Deutsche Bank") recorded an

5    assignment of the deed of trust from Washington Mutual Bank.  (*Id*. ¶ 29.)  Nearly five

6    years later, on April 4, 2013, JPMorgan Chase Bank ("JPMorgan") recorded an

7    assignment of the deed of trust from Deutsche Bank.  (Compl. ¶ 33 (noting that the year

8    is mistakenly listed as 2014 and that exhibit D states the correct date); *see id*. ¶ 33, Ex. D

9    at 2.)  JPMorgan then assigned the deed of trust to U.S. Bank and recorded the

10    assignment on August 3, 2015.  (*Id*. ¶ 34.)

11    In addition to the multiple assignments of the deed, the Gelinases allege that the

12    trustee of the deed also transferred multiple times.  (*Id*. ¶¶ 28-31.)  Before Deutsche Bank

13    recorded itself as the beneficiary of the deed of trust,[5] the bank recorded a substitution of

14    the trustee under the deed of trust by appointing Quality Loan as substitute trustee on July

15    18, 2008.  (*Id*. ¶ 28.)  On November 16, 2009, JPMorgan recorded J.P. Morgan Chase

16    Custody Services as trustee under the deed of trust.  (*Id*. ¶ 32, Ex. C at 2.)  On April 24,

17    2013, JPMorgan appointed Quality Loan as the new trustee under the deed of trust.  (Req.

18    at 2, Ex. E, at 34.)

19    *//*

20    _____

21    [4]  "Pro se pleadings are liberally construed . . . ."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

22    [5]  Washington Mutual assigned Deutsche Bank as beneficiary of the deed of trust, and recorded the assignment on August 1, 2008.  (Compl. ¶ 29.)

ORDER - 3

1    In May, 2016, Quality Loan—the recorded trustee at that time—notified the

2    Gelinases of the pending trustee's sale.  (*Id.*, Ex. F at 37.)  On August 12, 2016, Mr.

3    Gelinas filed for bankruptcy, and on August 29, 2016, Mr. Gelinas amended his

4    bankruptcy filing.  (Compl. ¶ 18; Req. at 2, Ex. A, at 1.)

5    On September 16, 2016, the Gelinases filed this *pro se* lawsuit against U.S. Bank,

6    Quality Loan, JPMorgan, Long Beach Mortgage Loan Trust 2006-10, Deutsche Bank,

7    Caliber Home, and Does 1-10.  In their complaint, the Gelinases assert a claim to quiet

8    title to the subject property.  (Compl. ¶ 20.)  They allege that there is no evidence that

9    JPMorgan could have a valid "security interest in the Note."  (*Id.* ¶ 20.)  Based on this

10   absence of "evidence," the Gelinases assert that the assignment to JPMorgan is invalid,

11   and as a result "there have been multiplicities of invalid, illegitimate[,] and unauthorized

12   recordings in the Snohomish Country [sic] Recorders' Office, all of which must be

13   rescinded."  (*Id.* ¶ 21.)  The Gelinases also allege that these "illegitimate . . . recordings"

14   constitute slander of title, and they request special damages of $100,000.00.  (*Id.* ¶¶ 26,

15   36.)  Finally, the Gelinases allege that Quality Loan is not authorized to collect payments

16   from them or to threaten to foreclose on their property and that Quality Loan's attempts

17   to do so violate 15 U.S.C. § 1692e(5).[6]  (*Id.* ¶¶ 23-24.)

18   The Gelinases also seek declaratory relief in the form of "a judicial determination

19   of the rights, obligations, and interests of the parties with regard to the Property."  (*Id.*

20

21   _____

     [6] The Gelinases allege that Quality Loan violated "FDCPA 15 U.S.C. § 1692e 807(5)."
     (Compl. ¶ 24.)  Since Section 807 was re-codified as Section 1692e in 1996, the statute in

22   question appears to be Section 1692e.  *See* Omnibus Consolidated Appropriations Act, 1997 Pub.
     L. No. 104-208, § 2305, 110 Stat 3009 (1996).

¶ 38.)  Specifically, the Gelinases ask for a determination that U.S. Bank is not the beneficiary under the deed of trust.  (*Id.* ¶ 39.)  Furthermore, the Gelinases request that "all scheduled foreclosure proceedings be vacated," and that U.S. Bank "be forever estopped from foreclosing on the subject property."  (*Id.* ¶ 40.)

### III.   ANALYSIS

U.S. Bank, Caliber Home, and Quality Loan move for dismissal under Federal Rule of Civil Procedure 12(b)(6).  (1st Mot. at 1; 2d Mot. at 1.)  Because U.S. Bank and Caliber Home's motion relies, in part, on documents for which they request judicial notice, the court begins by addressing the parties' requests for judicial notice.  The court then addresses the motions to dismiss and whether leave to amend is appropriate.

**A.   Judicial Notice**

Because the motions to dismiss rely on certain documents, the court first addresses U.S. Bank and Caliber Home's and the Gelinases' requests for judicial notice.  (Req.; Obj. (Dkt. # 12).)  U.S. Bank and Caliber Home request that the court notice the recording of the deed of trust of the subject property (Req. at 2, Ex. A), three sequential recordings of the assignment of the deed of trust (*id.*, Exs. B, C, D), a recorded notice of successor trustee (*id.*, Ex. E), a recorded notice of trustee sale (*id.*, Ex. F), and Mr. Gelinas's amended petition for bankruptcy (*id.*, Ex. G).

The Gelinases oppose all of these requests.  (*See generally* Obj.)  In their opposition, the Gelinases assert that "[t]here are a multiplicity of problems/errors on the documents recorded in the Snohomish County Registry."  (*Id.* at 2.)  The Gelinases further argue that the documents in question are in dispute and thus cannot be judicially

1    noticed.  (*Id.*)  The Gelinases also oppose the court taking judicial notice of the

2    bankruptcy petition, but offer only the assertion that "Plaintiffs['] schedules have been

3    amended again."  (*Id.* at 3.)  U.S. Bank and Caliber Home reply that the Gelinases object

4    only to the "validity of the documents, not the content therein."  (Not. Reply (Dkt. # 14)

5    at 2.)  Furthermore, U.S. Bank and Caliber Home assert that the documents are all

6    incorporated by reference into the complaint (*id.* (citing *U.S. v. Ritchie*, 342 F.3d 903,

7    908-09 (9th Cir. 2003))), and that a court can take judicial notice of a public record that

8    contains contested facts, provided that the authenticity of the document is not subject to

9    reasonable dispute (*id.* at 2-3).

10          In their response to U.S. Bank and Caliber Home's request, the Gelinases also

11   request judicial notice of a document that appears to be a title search by a company called

12   Certified Loan Auditors.[7]  (Obj. at 5-8.)  U.S. Bank and Caliber Home oppose this

13   request, arguing that the document is not a public record and that the court should not

14   consider it in ruling on their motion to dismiss.  (Not. Reply at 4-5.)

15          "The court may judicially notice a fact that is not subject to reasonable dispute

16   because it . . . can be accurately and readily determined from sources whose accuracy

17   cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The court can take judicial

18   notice of public records that are not "subject to reasonable dispute."  *Santa Monica Food

19   Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (citing *Lee*

20   ───────────────────

21   [7] The Gelinases' complaint also contains a request for judicial notice.  (Compl. at 26.)
     The Gelinases request that the court take notice of a number of Supreme Court and federal
     Circuit Court decisions regarding treatment of *pro se* litigants.  (*Id.*)  The court duly notes and

22   applies the standard by which it must assess *pro se* pleadings.  *See Balistreri*, 901 F.2d at 699;
     *see also supra* n.4.

1   *v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by*

2   *Galbraith v. Cty. of Santa Clara*, 307 F. 3d 1119, 1125 (9th Cir. 2002)).  Indeed, a court

3   may take judicial notice of a public record when its authenticity is unchallenged, even if a

4   party contests the assertions contained within the document.  *See Palmason v.*

5   *Weyerhaeuser*, No. C11-0695RSL, 2013 WL 1788002, at *2-3 (W.D. Wash. Apr. 26,

6   2013) (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other*

7   *grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 127 (9th Cir. 2002)).  Courts

8   may also take judicial notice of court filings because their contents cannot be reasonably

9   disputed.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.

10   2006).

11          In this case, the court takes judicial notice of the recorded documents that U.S.

12   Bank and Caliber Home present to the court.  (*See* Req. at 2.)  U.S. Bank and Caliber

13   Home attest that these documents are authentic copies of Snohomish County public

14   records.  (Not. Reply at 3.)  Although the "factual statements and opinions contained

15   therein have not been conclusively established," these documents are authentic

16   documents recorded with a governmental agency.  *See Palmason*, 2013 WL 1788002, at

17   *3.[8]  The court also takes judicial notice of Mr. Gelinas's bankruptcy petition.  (*See* Req.

18   at 2, Ex. G at 2.)

19

20          [8] Additionally, these records are incorporated by reference into the Gelinases' complaint.
    (*See* Compl. ¶¶ 21, 31, 35.)  A document is "incorporated by reference into a complaint if the
21   plaintiff refers extensively to the document or the document forms the basis of the plaintiff's
    claim." *Ritchie*, 342 F.3d at 908.  In this case, the recording documents for the property form the
22   basis for the Gelinases' assertions that Defendants "illegitimate[ly]" recorded the deed of trust
    assignments.  (Compl. ¶¶ 21, 31, 35.)

1    However, the court denies the Gelinases' request for judicial notice of the title

2    search document.  Although this document references public records, the document

3    appears to be the product of a private company that conducted a title search for the

4    Gelinases.  (*See* Obj. at 5-8.)  Accordingly, the document is not a public record, and it

5    cannot be "accurately and readily determined from sources whose accuracy cannot

6    reasonably be questioned."  Fed. R. Evid. 201(b).

7    The court now addresses the motions to dismiss the Gelinases' complaint.  (*See* 1st

8    Mot.; 2d Mot.)

9    **B.    Motions to Dismiss**

10    1.    Legal Standard

11    When considering a motion to dismiss under Federal Rule of Civil Procedure

12    12(b)(6), the court construes the complaint in the light most favorable to the nonmoving

13    party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

14    2005).  The court must accept all well-pleaded allegations of material fact as true and

15    draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v.*

16    *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to

17    dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

18    claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

19    (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus*

20    *VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility

21    when the plaintiff pleads factual content that allows the court to draw the reasonable

22    inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

The court, however, need not accept as true a legal conclusion presented as a factual allegation. *Id.* Although Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* A complaint does not survive dismissal where "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In addition, "[a] plaintiff suing multiple defendants 'must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them.'" *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)). In deciding a motion to dismiss, the court may consider the pleadings, documents attached to the pleadings, documents that are judicially noticed, and documents that the pleadings incorporate by reference. *Ritchie*, 342 F.3d at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)).

### 2.  U.S. Bank and Caliber Home's Motion to Dismiss

#### a.  *Judicial Estoppel*

U.S. Bank and Caliber Home first argue that all of the Gelinases' claims are barred by the doctrine of judicial estoppel. (1st Mot. at 5-6.) Relying on Mr. Gelinas's bankruptcy petition, U.S. Bank and Caliber Home assert that Mr. Gelinas did not list the

1    claims he asserts in this action in his bankruptcy petition.  (*Id.* at 6.)  They argue that the

2    failure to list the claims means that the Gelinases have taken a position in this litigation

3    that is inconsistent with their position in the bankruptcy action.  (*Id.*)  U.S. and Caliber

4    Home further contend that the Gelinases' inconsistent positions have "misled the

5    bankruptcy court about their assets" and "misused judicial resources."  (*Id.*)  The

6    Gelinases respond to this argument only by noting that Mr. Gelinas filed an amended

7    bankruptcy petition.  (Obj. at 3 (noting the updated bankruptcy petition); *see generally*

8    Resp. (Dkt. # 11) (containing no response to the argument).)

9           "'Judicial estoppel is an equitable doctrine that precludes a party from gaining an

10   advantage by asserting one position, and then later seeking an advantage by taking a

11   clearly inconsistent position.'"  *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d

12   1024, 1044-45 (9th Cir. 2016) (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270

13   F.3d 778, 782 (9th Cir. 2001)).  Three factors may guide a court's decision whether to

14   apply the doctrine: (1) whether a party's later position is clearly inconsistent with a

15   previous position; (2) whether the party persuaded the prior court to accept the earlier

16   inconsistent position; and (3) whether the inconsistency gave the litigant an unfair

17   advantage in the subsequent suit.  *Hamilton*, 270 F.3d at 782 (citing *New Hampshire v.*

18   *Maine,* 532 U.S. 742, 751 (2001)).  However, "[a]bsent success in a prior proceeding, a

19   party's later inconsistent position introduces no risk of inconsistent court

20   determinations."  *New Hampshire*, 532 U.S. at 750–51 (2001) (internal quotation marks

21   omitted).  When there is no such risk, courts often decline to find that judicial estoppel

22   bars a claim.  *See Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 272 (9th Cir.

ORDER - 10

1   2013) (quoting *New Hampshire*, 532 U.S. at 753)).  That is in part because judicial

2   estoppel "is not meant to be a technical defense for litigants seeking to derail potentially

3   meritorious claims, especially when . . . there is no evidence of intent to manipulate or

4   mislead the courts." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d

5   355, 365 (3d Cir. 1996).

6       In the bankruptcy context, the Ninth Circuit has established a "basic default rule"

7   regarding judicial estoppel:  "If a plaintiff-debtor omits a pending (or soon-to-be-filed)

8   lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation),

9   judicial estoppel bars the action." *Ah Quin*, 733 F.3d at 271.  However, "dismissal of [a

10  p]laintiff's bankruptcy case alone, without any showing that the bankruptcy court relied

11  on [the p]laintiff's incomplete schedules, is insufficient." *Boatright v. Aurora Loan

12  Servs.*, No. C-12-00009 EDL, 2012 WL 2792415, at *3 (N.D. Cal. July 9, 2012); *see also

13  Evans v. Potter*, No. 1:08-CV-1687-TWT, 2009 WL 529599, at *3 (N.D. Ga. Feb. 27,

14  2009).  "After an order of dismissal, the debtor's debts and property are subject to the

15  general laws, unaffected by bankruptcy concepts." *In re Income Prop. Builders, Inc.*, 699

16  F.2d 963, 965 (9th Cir. 1982).  Accordingly, a debtor does not necessarily benefit from

17  the prior inconsistent position where a bankruptcy court dismisses his petition without

18  discharging or reorganizing the debt.

19      In Mr. Gelinas's August 29, 2016, amended bankruptcy petition, Mr. Gelinas

20  failed to list as potential assets the claims he asserts here.  (*See* Req. at 2, Ex. G at 10.)

21  By bringing this suit, Mr. Gelinas has taken clearly inconsistent positions, which could

22  have given Mr. Gelinas an advantage in the bankruptcy matter.  In short, Mr. Gelinas's

1    failure to list these claims creates the appearance that he has fewer assets than he might

2    actually have.

3         However, on November 9, 2016, the bankruptcy court dismissed Mr. Gelinas's

4    bankruptcy petition.  *In re Gelinas*, No. 16-14167MLB, Dkt. ## 39, 40 (Bankr. W.D.

5    Wash. Nov. 9, 2016).  There is no indication that the bankruptcy court "certif[ied] or

6    confirm[ed] a bankruptcy plan," or that "the bankruptcy court made any orders at all

7    regarding [Mr. Gelinas's] schedules."  *See Boatright*, 2012 WL 2792415, at *3.

8    Therefore, on the facts before the court, it does not appear that Mr. Gelinas's prior

9    inconsistent position benefited him—a key factor in determining whether to apply

10   judicial estoppel.

11        The court's conclusion is bolstered by the cases that U.S. Bank and Caliber Home

12   cite in support of their motion to dismiss.  In those cases, the debtor had utilized the prior

13   inconsistent position to the debtor's benefit—the debtor's debts had been discharged in

14   bankruptcy.  *See, e.g.*, *Haag v. PNC Bank NA*, No. C13-1746JLR, 2014 WL 1725801, at

15   *3 (W.D. Wash. Apr. 30, 2014) (noting that the plaintiff failed to list potential

16   foreclosure-related claims in a bankruptcy petition and tried to bring those claims after

17   bankruptcy); *Janaszak v. Wells Fargo Bank NA*, No. C12-5427BHS, 2012 WL 4514460,

18   at *2 (W.D. Wash. Oct. 1, 2012) (noting that the plaintiff's debts were discharged via

19   bankruptcy before the plaintiff brought suit); *Hernandez v. Response Mortg. Serv., Inc.*,

20   No. 11-05685RBL, 2011 WL 6884794, at *3 (W.D. Wash. Dec. 29, 2011) (noting that

21   the plaintiff had already completed bankruptcy before bringing suit).  In light of this case

22   //

1    law and the fact that the Gelinases are proceeding *pro se* in this matter, the court finds

2    that judicial estoppel does not bar this action on the facts currently before the court.[9]

3          b. *Quiet Title*

4          U.S. Bank and Caliber Home next argue that the Gelinases' failure to fulfill the

5    deed of trust obligations precludes a quiet title action.[10]  (1st Mot. at 7)  They also argue

6    that the Gelinases lack standing to challenge an assignment of the deed of trust or the

7    appointment of a successor trustee because as the borrowers, the Gelinases are "neither a

8    party to nor an intended beneficiary of the challenged agreements."  (*Id.*)  In response, the

9    Gelinases assert that "to quiet title to a property you need to eliminate the lien of

10   mortgage.  Not pay a non-existent debt."  (Resp. at 4 (emphasis omitted).)

11         A quiet title action is an "equitable proceeding to resolve competing claims of

12   ownership."  *Washington Fed. v. Azure Chelan LLC*, 382 P.3d 20, 26 (Wash. Ct. App.

13   2016).  Washington law provides that "[t]he plaintiff . . . shall set forth in his complaint

14   the nature of his estate, claim or title to the property, and the defendant may set up a legal

15   or equitable defense to plaintiff's claims; and the superior title, whether legal or

16   equitable, shall prevail."  RCW 7.28.120.  In order to adequately allege a quiet title

17   action, a plaintiff must allege that she has satisfied the deed of trust obligations.  *See*

18   *Hummel v. Nw. Tr.  Serv.,* 180 F. Supp. 3d 798, 809 (W.D. Wash. 2016); *Evans v. BAC*

19   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

     [9] Because the parties have not raised the issue, the court does not address whether Mr.
20   Gelinas's prior inconsistent position in a bankruptcy action in which he was the sole debtor
     would bar Ms. Gelinas's claims.

21        [10] The Gelinases allege this claim only against JPMorgan; however, quieting title to the
     subject property would affect the property interests of other parties to this action, which is
     presumably why both U.S. Bank and Caliber Home move to dismiss the Gelinases' quiet title
22   action.  (Compl. at 6; 1st Mot. at 7-8.)

1   *Home Loans Servicing LP*, No. C10-0656RSM, 2010 WL 5138394, at *4 (W.D. Wash.

2   Dec. 10, 2010). To satisfy the deed of trust obligations, the plaintiff must have repaid the

3   loan. *Hummel*, 180 F. Supp. 3d at 809.

4          The Gelinases make no allegations in their complaint regarding the repayment of

5   the deed of trust and respond to U.S. Bank and Caliber Home's motion with only

6   conclusory arguments. (*See generally* Compl.; Resp. at 4.) Construing the facts in the

7   light most favorable to the Gelinases, the Gelinases appear to allege that because the

8   recordings are "fraudulent," they do not have to satisfy the loan obligations. (*See

9   generally* Compl.; Resp. at 4.) However, the Gelinases' position does not accurately

10  reflect the law. *Hummel*, 180 F. Supp. 3d at 809. Indeed, as in *Hummel*, the Gelinases

11  "conspicuously avoid[] discussing or disputing [their] default" on repayment of the loan.

12  180 F. Supp. 3d at 809. By failing to allege that they repaid the debt, the Gelinases fail to

13  adequately allege a quiet title claim.

14         In addition to failing to allege that they repaid the debt, the Gelinases fail to

15  include facts sufficient to show they have standing to challenge any assignments of the

16  deed. "[A] borrower generally lacks standing to challenge the assignment of its loan

17  documents unless the borrower shows that it is at a genuine risk of paying the same debt

18  twice." *Hummel*, 180 F. Supp. 3d at 806 (quoting *Andrews v. Countrywide Bank, NA*, 95

19  F. Supp. 3d 1298, 1302 (W.D. Wash. 2015)). The Gelinases do not allege facts from

20  which the court can reasonably infer that they will have to pay the debt twice, and the

21  Gelinases make no argument on this point in their response. (*See generally* Compl.;

22  Resp. at 11.) Thus, they lack standing to challenge the assignments as a basis for their

1    quiet title claim.

2         For these reasons, the Gelinases fail to state a quiet title claim.

3              *c.  Slander of Title*

4         U.S. Bank and Caliber Home also move to dismiss the slander of title claim

5    against them.  (1st Mot. at 10.)  Specifically, they argue that the Gelinases do not allege

6    any facts supporting malicious publication.  (*Id.*)  Further, U.S. Bank and Caliber Home

7    argue that "to the extent Plaintiffs' claim is based on challenging prior Notices of

8    Trustee's Sale that may have been recorded . . . the claim became moot once those

9    foreclosures were discontinued."  (*Id.*)

10        The Gelinases respond that the "[d]efendants recorded fraudulent documents in the

11   Snohomish County Recorder's office."  (Resp. at 11.)  The Gelinases "consider these

12   documents to be invalid" and assert that the assignments "must be removed from the

13   County Records' Register."  (*Id.*)

14        In Washington, a plaintiff must allege the following elements to state a claim for

15   slander of title:  "(1) false words; (2) maliciously published; (3) with reference to some

16   pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result

17   in plaintiff's pecuniary loss."  *Certification from the U.S. Court of Appeals for the Ninth*

18   *Circuit in Centurion Prop. III, LLC v. Chicago Title Ins. Co.*, 375 P.3d 651, 662 (Wash.

19   2016) (citing *Rorvig v. Douglas*, 873 P.2d 492, 496 (Wash. 1994)).  "Malice is not

20   present where the allegedly slanderous statements were made in good faith and were

21   prompted by a reasonable belief in their veracity."  *Hummel*, 180 F. Supp. 3d at 809

22   (quoting *Brown v. Safeway Stores, Inc.*, 617 P.2d 704, 713 (1980)); *see also Rorvig,* 873

1    P.2d at 496.  Specifically, "the initiation of foreclosure proceedings cannot form the basis

2    of a slander of title claim" because it does not constitute malicious publication.  *Beaton v.*

3    *JPMorgan Chase Bank, N.A.*, No. C11-0872RAJ, 2012 WL 909768, at *3 n.5 (W.D.

4    Wash Mar. 15, 2012) (citing *Krienke v. Chase Home Fin., LLC*, No. 35098-0-II, 2007

5    WL 2713737, at *6 (Wash. Ct. App. Sept. 18, 2007)).

6         Here, the Gelinases make only conclusory allegations of Defendants' bad faith or

7    actions, none of which reasonably support an inference of malice.  (*See, e.g.*, Compl. ¶ 26

8    ("The recordation of said documents clearly constitute[s] a Slander of Title!").)  In

9    addition, most of the Gelinases' allegations stem from the foreclosure proceeding, and the

10   initiation of a foreclosure proceeding alone cannot constitute malice.  *See Beaton*, 2012

11   WL 909768, at *3 n.5.  For these reasons, the court dismisses the Gelinases' slander of

12   title claim.[11]

13             *d.  Declaratory Judgment*

14        Finally, U.S. Bank and Caliber Home argue that the Gelinases' allegations

15   regarding declaratory judgment merely reiterate their "challenge to any of the defendant's

16   standing to foreclose," and for this reason, they argue that the Gelinases' declaratory

17   judgment claim "fail[s] as a matter of law." (1st Mot. at 10.)  The Gelinases do not

18   respond to this argument.  (Resp. at 5.)

19   //

20   //

21
        _____
         [11] The court declines to address the remaining elements of the slander of title claim and
22   U.S. Bank and Caliber Home's arguments because the Gelinases fail to make sufficient factual
     allegations of malicious publication—a key element of their claim.

1    The court agrees with U.S. Bank and Caliber Home.  The declaratory judgment

2    section of the Gelinases' complaint merely recites assertions made earlier in the

3    complaint without making any additional allegations.[12]  (Compl. ¶¶ 37-21); *see also* 28

4    U.S.C § 2201.  Thus, the Gelinases effectively re-assert the same facts for their

5    "declaratory judgment" claim as for their other claims.  (*Compare id.* ¶¶ 19-21; *with id.*,

6    ¶¶ 37-41.)  Because the court has already concluded that the Gelinases do not allege

7    sufficient facts to state a quiet title or slander of title claim, the court dismisses the

8    Gelinases' claim for declaratory judgment.[13]

9        3.  Quality Loan's Motion to Dismiss

10           a.  *Violation of the Fair Debt Collection Practices Act ("the FDCPA")*

11   Quality Loan also moves to dismiss the Gelinases' claim against Quality Loan.

12   (*See* 2d Mot.)  Quality Loan argues that it is not a "debt collector" under the FDCPA, and

13   therefore 15 U.S.C. § 1692e(5)'s prohibitions against false or misleading representations

14   do not apply.  (2d Mot. (Dkt. # 10) at 2-3.)  Additionally, Quality Loan argues that even

15   if it were a debt collector within the meaning of the FDCPA, the Gelinases fail to allege

16   "a deceptive act or misleading representation"—a statutory requirement for bringing a

---

17   [12] The Gelinases do not cite a statute in the portion of their complaint where they request
18   declaratory judgment, and it is unclear whether they bring their claim under the state or federal
     declaratory judgment statute.  (*See generally* Compl. ¶¶ 37-41.)  Given the similarity of the
19   statutes, the court analyzes the claim as though the Gelinases intended to invoke the federal
     statute.  *See* 28 U.S.C § 2201.  However, under the Washington State Uniform Declaratory
     Judgment Act, this claim fails for similar reasons.  *See* RCW 7.24.010.

20   [13] The declaratory judgment section of the complaint may also contain a request for a
21   permanent injunction against U.S. Bank.  (*See* Compl. ¶ 40.)  The Gelinases request that "any
     and all scheduled foreclosure proceedings be vacated; and the Defendant be forever stopped
     from foreclosing on the subject property."  (*Id.*)  However, the court declines to issue injunctive
22   relief where the Gelinases' underlying claims fail.

1    claim under the FDCPA.  (*Id.* at 3-4.)  The Gelinases have not responded to Quality

2    Loan's motion.  (*See generally* Dkt.)

3          Section 1692e(5) provides that a "debt collector" may not "threat[en] to take any

4    action that cannot legally be taken or that is not intended to be taken."  15 U.S.C.

5    § 1692e(5).  Thus, only a "debt collector" as defined under the FDCPA can violate 15

6    U.S.C. § 1692e(5).  *See* 15 U.S.C. 1692a(6); *Cameron v. Acceptance Capital Mort. Corp*,

7    No. C13-0707RSM, 2013 WL 5664706, at *4 (W.D. Wash. Oct 16, 2013); *Fagerlie v.*

8    *HSBS Bank, NA*, No. C12-2205RSM, 2013 WL 1914395, at *5 (W.D. Wash. May 8,

9    2013); *Fong v. Prof'l Foreclosure Corp.*, No. C05-0123JLR, 2005 WL 3134059, at *2

10   (W.D. Wash. Nov. 22, 2005).  The FDCPA defines a "debt collector" as:

11         Any person who uses any instrumentality of interstate commerce or the
           mails in any business the principal purpose of which is the collection of any
12         debts, or who regularly collects or attempts to collect, directly or indirectly,
           debts owed or due or asserted to be owed or due another.
13
14   15 U.S.C. § 1692a(6).  However, the definition of a debt collector "does not include

15   . . . any person collecting or attempting to collect any debt owed or due or asserted to be

16   owed or due another to the extent such activity . . . concerns a debt which was not in

17   default at the time it was obtained by such person."  *Id.*  For this reason, judges in the

18   Western District of Washington have consistently concluded that a non-judicial

19   foreclosure action by a trustee does not generally constitute debt collection under the

20   FDCPA.  *See Fagerlie*, 2013 WL 1914395, at *5; *Thepvongsa v. Reg'l Tr. Servs. Corp.*,

21   No. C10-1045RSL, 2011 WL 307364, at *8 (W.D. Wash. Jan. 26, 2011); *Fong*, 2005 WL

22   //

3134059, at *2 ("A trustee . . . who commences foreclosure on a property pursuant to a deed of trust is not a debt collector as broadly defined by the FDCPA.").

The Gelinases' complaint contains no allegations that the debt at issue was not in default when Quality Loan became the trustee under the deed of trust and initiated the non-judicial foreclosure proceeding.  (*See generally* Compl.)  Viewing the complaint in the light most favorable to the non-moving party, the Gelinases may be attempting to assert that deficiencies in the chain of title led Quality Loan to "threaten" to foreclose on the Gelinases' property when Quality Loan allegedly had no legal right to do so.  (Compl. ¶¶ 21-23.)  Even after making this inference in the Gelinases' favor, however, the Gelinases fail to state an FDCPA claim against Quality Loan because there are no allegations that the loan was not in default.  Thus, the court grants Quality Loan's motion to dismiss.

4. <u>Leave to Amend</u>

Having concluded that the Gelinases fail to state a claim against U.S. Bank, Caliber Home, and Quality Loan, the court now considers whether it should grant the Gelinases leave to amend.  (Resp. at 3.)  The Gelinases seek leave to amend "to include new causes of action."  (*Id.*)  U.S. Bank and Caliber Home oppose granting leave to amend because the "[c]omplaint offers no suggestion that the defects may be cured by an amended pleading."  (1st Mot. at 10.)  They further argue that the Gelinases offer only vague promises of new claims, without showing how these claims will survive dismissal due to the Gelinases' failure to repay their loan.  (Reply (Dkt. # 13) at 4.)  Quality Loan does not address amendment.  (*See* 2d Mot.)

1    Federal Rule of Civil Procedure 15 states that "the court should freely give leave

2    [to amend pleadings] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In order to

3    determine whether justice requires leave to amend, the court considers:  (1) the presence

4    or absence of undue delay, (2) bad faith, (3) dilatory motive, (4) "repeated failure to cure

5    deficiencies" in previous amendments, and (5) futility of the amendment.  *Moore v.*

6    *Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*,

7    371 U.S. 178, 181, 83 (1962)).  "Unless it is absolutely clear that no amendment can cure

8    the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an

9    opportunity to amend prior to dismissal of the action."  *Garity v. APWU Nat'l Labor*

10   *Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245,

11   248 (9th Cir. 1995) (per curiam)).

12   Given Rule 15's favorable pleading standard, the court grants the Gelinases leave

13   to amend their complaint.  At this stage, the court cannot conclude that the Gelinases

14   cannot possibly remedy their complaint to state a claim.  Nor is there any indication of

15   undue delay, bad faith, or dilatory motive, and the Gelinases have not previously

16   amended their complaint.  Accordingly, the Gelinases' must file an amended complaint,

17   if any, no later than 20 days of the date from this order.  Failure to file an amended

18   complaint within this timeframe may result in the court dismissing the Gelinases' claims

19   against U.S. Bank, Caliber Home, and Quality Loan.

20   **C.    Service of Process on the Remaining Defendants**

21   Although the parties do not raise the issue, the court notes that it does not appear

22   that the other defendants in this action have been served.  (*See generally* Dkt.)  Federal

1   Rule of Civil Procedure 4 requires plaintiffs to serve defendants with a summons and a

2   copy of the plaintiff's complaint and sets forth the specific requirements for doing so.

3   *See* Fed. R. Civ. P. 4.  Rule 4(m), which provides the timeframe in which service must be

4   effectuated, states in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the
> court—on motion or on its own after notice to the plaintiff—must dismiss
> the action without prejudice against that defendant or order that service be
> made within a specified time.  But if the plaintiff shows good cause for the
> failure, the court must extend the time for service for an appropriate period.

8   Fed. R. Civ. P. 4(m); *see also* Fed. R. Civ. P. 4(l) (stating requirement of proving

9   service).  The Gelinases filed their complaint on September 16, 2016.  (Compl. at 1.)

10  However, there is no evidence in the record that the Gelinases properly served Deutsche

11  Bank, Long Beach Mortgage Loan Trust 2006-10, or JPMorgan ("the Remaining

12  Defendants") with the summons and complaint within the time period that Rule 4(m)

13  provides.  (*See generally* Dkt.)  Therefore, the Gelinases must show cause within 20 days

14  of this order why their claims against the Remaining Defendants should not be dismissed

15  for failure to comply with Rule 4(m).  The Gelinases' response to the court's order to

16  show cause should be filed separately from any amended complaint.  If the Gelinases fail

17  to show good cause for their failure to serve these defendants, the court will dismiss the

18  claims against the Remaining Defendants without prejudice pursuant to Rule 4(m).

19  ## IV.    CONCLUSION

20         For the reasons set forth in this order, the court GRANTS U.S. Bank and Caliber

21  Home's motion to dismiss (Dkt. # 8) and GRANTS Quality Loan's motion to dismiss

22  (Dkt. # 10).  The court also GRANTS the Gelinases leave to amend their complaint.  The

1   Gelinases must file their amended complaint, if any, no later than twenty (20) days of the

2   date of this order.  The court further ORDERS the Gelinases to SHOW CAUSE within

3   twenty (20) days of the date of this order why their claims against JPMorgan, Long

4   Beach Mortgage Loan Trust 2006-10, Deutsche Bank, and Does 1-10 should not be

5   dismissed.  Any amended complaint and response to the court's order to show cause must

6   be filed separately.

7   　　　　Dated this 10th day of February, 2017.

8

9

10   _____

11   JAMES L. ROBART
      United States District Judge

12

13

14

15

16

17

18

19

20

21

22